UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 91 Cr. 358-16 (KPF) |
| MAXIMO REYES, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Maximo Reyes, who is currently incarcerated at the Moshannon Valley Correctional Center ("MVCC"), has applied for compassionate release, in the form of a resentencing to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #343-345).[1] In brief, Mr. Reyes contends that he is at an increased risk of contracting or of having a more serious reaction to the COVID-19 virus. The Government opposes Mr. Reyes's motion. (Dkt. #346-347). As set forth in the remainder of this Order, while acknowledging the strides Mr. Reyes has made while incarcerated, the Court does not believe that those rehabilitative efforts, even coupled with his medical conditions and the disruption occasioned by the pandemic, warrant his immediate release. Accordingly, the Court denies Mr. Reyes's motion for compassionate release.

## BACKGROUND

In September 1991, Mr. Reyes was charged in Superseding Indictment S3 91 Cr. 358 (the "Indictment") in four counts: (i) participating in a

---

[1]     The Court pauses to acknowledge the fine work done on Mr. Reyes's behalf, on a *pro bono* basis, by the law firm of Cadwalader, Wickersham & Taft LLP.

racketeering enterprise, in violation of 18 U.S.C. § 1962(c); (ii) racketeering

conspiracy, in violation of 18 U.S.C. § 1962(d); (iii) narcotics conspiracy, in

violation of 21 U.S.C. § 846; and (iv) engaging in a continuing criminal

enterprise, in violation of 21 U.S.C. § 848.  (Dkt. #82).  The charges against Mr.

Reyes stemmed from his leadership role in a Brooklyn-based drug trafficking

organization, referred to in the Indictment as the "Company."  (*Id.*).  The case

was initially assigned to the Honorable Leonard B. Sand, who later observed

that Mr. Reyes had been "charged with being the head of a large racketeering

enterprise which sold cocaine to the public and protected its turf through

violent means, including at least five murders."  *Reyes* v. *United States*, No. 02

Civ. 1665 (LBS), 2002 WL 975673, at *1 (S.D.N.Y. May 9, 2002) ("*Reyes I*").[2]

Mr. Reyes remained a fugitive from the 1991 return of the Indictment

until he was extradited from the Dominican Republic in 1997.  *See Reyes I*,

2002 WL 975673, at *1; *see also United States* v. *Reyes*, No. 91 Cr. 358-16

(KPF), 2019 WL 7790899, at *1 (S.D.N.Y. May 7, 2019) ("*Reyes II*").  On

December 5, 1997, Mr. Reyes waived indictment and pleaded guilty to a two-

count Superseding Information, S6 91 Cr. 358 (LBS), which charged him in

Count One with participating in a racketeering enterprise, in violation of 18

U.S.C. § 1962(c), and in Count Two with conspiracy to commit murder in aid of

racketeering, in violation of 18 U.S.C. § 1959(a)(5).  (Dkt. #194 (the

---

[2]    Mr. Reyes was one of 17 defendants charged in the matter; of this group, only Mr.
Reyes's case has been transferred to the undersigned.

"Information"); Dkt. #199 (plea transcript)).  During his allocution, Mr. Reyes

acknowledged that:

> I had two drug selling spots. I had several people
> working for me and my brother.  There were people with
> different jobs assigned to them.  Some people were in
> charge of packaging the drugs in little $20 packages in
> the so-called office in an apartment here in Manhattan.
> Other people were in charge of transporting [the drugs]
> into Brooklyn.  There were other people in charge of
> distributing it in Brooklyn at the spots.  Other people
> were in charge of the security at the spots.
>
> On several occasions there was a great deal of violence
> and deaths.  I assume responsibility because I was their
> boss.  They did a lot of things that I ordered them to do.
> They did a lot of things that were my responsibility.  I
> had told them that they should do whatever was
> necessary to insure the safety of the spots even if that
> involved killing people.

(Dkt. #199 at 11).  Specifically, Mr. Reyes admitted to conspiring to murder

brothers Roberto, Francisco, and Rafael Lugo (*id.*); Dwayne Gaymon (*id.* at 12-

14); and Jose Montalvo (*id.* at 15-16); Mr. Reyes confirmed during his

allocution that each of the five men had in fact been killed (*id.* at 11-16).  Mr.

Reyes also acknowledged supervising "15 people or more, maybe more" in the

charged racketeering conspiracy between 1989 and 1991.  (*Id.* at 12).  At the

conclusion of the proceeding, Judge Sand accepted Mr. Reyes's guilty plea.  (*Id.*

at 17).

Sentencing took place on May 6, 1998.  (Dkt. #210 (transcript)).  Judge

Sand observed that the aggregate statutory maximum for Counts One and Two

was 30 years' imprisonment, but that the otherwise-applicable Guidelines

range was life imprisonment:

> Well, counsel is quite correct that the Court is fully familiar with the extensive operations of this criminal activity which the defendant headed, and the seriousness of the crimes, including murders which were committed by this group. The Probation Department states its view to be that were it not the maximums, this is criminal conduct which would warrant imposition of life imprisonment.
>
> The parties have stipulated to the guidelines, have stipulated that any request for downward departure from the Guidelines would be inappropriate here, and the Court accepts that agreement and stipulation and believes it is entirely appropriate under the facts of this case.

(*Id.* at 3-4). Accordingly, Judge Sand imposed an aggregate term of 30 years' imprisonment, followed by concurrent terms of three years' supervised release. (*Id.* at 4; *see also* Dkt. #207 (judgment)). As the Government correctly notes, Mr. Reyes did not file a direct appeal of his conviction or sentence, but subsequently filed challenges to his conviction and sentence in both this District and the district of his confinement. (Dkt. #346 at 2 (collecting matters)).

On July 22, 2020, Mr. Reyes filed a counseled emergency motion to reduce his sentence pursuant to the compassionate release provision set forth in 18 U.S.C. § 3582(c)(1)(A). (Dkt. #343-345). In broad summary, Mr. Reyes argued that the confluence of the COVID-19 outbreak, his preexisting medical conditions, and his post-sentencing rehabilitation constituted "extraordinary and compelling reasons" warranting a reduction in his sentence to time served. The Government filed submissions in opposition to Mr. Reyes's motion on July 29 and August 4, 2020 (Dkt. #346, 347), and submitted his medical

records under seal to the Court (Sealed Ex. A).  Mr. Reyes filed his reply submission on August 5, 2020.  (Dkt. #350).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons (the "BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).  "The defendant has the burden to show he is entitled to a sentence reduction."  *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for

sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's physical circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & n.1(A), (D). Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the determination made by the BOP. *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020). In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Mr. Reyes's motion is properly before the Court because his request to the Warden for a sentence reduction was rejected on April 22, 2020. (Dkt. #344 at 5). The issue at hand is whether Mr. Reyes has identified "extraordinary and compelling reasons" warranting his release. The Court finds that he has not.

Mr. Reyes notes that in the more than two decades since his arrest, he "has been fully and unconditionally rehabilitated," successfully completing

"dozens of BOP rehabilitative programs [and] racking up more than 3,000 hours of programming." (Dkt. #344 at 10).  Mr. Reyes even obtained his GED in 2012 while in BOP custody.  (*Id.*).  And Mr. Reyes has distinguished himself in prison for his deep-seated piety, evidenced by his public and private Christian ministries to other inmates.  (*Id.*).  The Court is heartened by Mr. Reyes's growth and accomplishments while incarcerated.  But as the defense recognizes (*id.* at 10-11), these developments, however commendable, do not by themselves support the extraordinary relief of compassionate release.  *See* U.S.S.G. § 1B1.13, n.3 ("rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason").

Instead, Mr. Reyes argues that the combination of his significant rehabilitative efforts and the public health concerns occasioned by the COVID-19 pandemic warrant his immediate release.  In particular, Mr. Reyes argues that the conditions of his incarceration at MVCC place him at a higher risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of the nature of his confinement at the facility, his pre-existing medical conditions, and the claimed inability of prison staff to handle the outbreak.  (Dkt. #344 at 3-4).

The Court recognizes, as do the parties, that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.  (*See, e.g.*, Dkt. #344 at 16-18 (defense listing of cases granting compassionate release to inmates); Dkt. #346 at 4 (Government reference to

prior Court discussion of cases granting and denying compassionate release to inmates)).  This Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant.  In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Reyes is 60 years old, an age at which he faces an elevated risk of hospitalization or death from COVID-19.  *See* Weekly Updates by Select Demographic and Geographic Characteristics, CENTER FOR DISEASE CONTROL,

https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (accessed September 11, 2020).  He also proffers information about pre-existing medical conditions, namely, hypertension (high blood pressure), hyperlipidemia (which Mr. Reyes defines as "high blood cholesterol/coronary artery disease"), prior episodes involving the removal of pre-cancerous colorectal polyps, and diagnosed upper-respiratory illnesses.  (Dkt. #344 at 2, 8; Dkt. #350 at 7-8).  As the Government notes (*see* Dkt. #346 at 5), Mr. Reyes's medical records support certain of the defense's proffered conditions, though the Court finds insufficient evidence of coronary artery disease.  Indeed, when Mr. Reyes requested his medical records in connection with this motion, a medical professional at MVCC reminded him that his diagnoses were "hyperlipid[emia,] hypertension and history of +PPD [positive purified protein derivative skin tests, indicating exposure to tuberculosis][.  T]hey are under good control and unchanged from prior clinic."  (Sealed Ex. A at 16).

The Centers for Disease Control and Prevention has recently revised its analysis of comorbidities, distinguishing conditions that place individuals at higher risk with regard to COVID-19, from conditions that *might* place individuals at higher risk, but for which more study is required. *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

(accessed September 11, 2020).  Hypertension falls into the latter category; hyperlipidemia, polyps, and Mr. Reyes's prior respiratory infections do not fall into either category.

The Court has reviewed Mr. Reyes's medical records closely, and concludes that there is nothing to suggest that he has not received proper medical care at MVCC or any prior BOP institution to which he was designated. Nor is there evidence to suggest that he is unable to manage his conditions, or to provide self-care.  More to the point, Mr. Reyes has not suggested that his medical care has been delayed or hampered by the COVID-19 pandemic, and the Court's review discloses that Mr. Reyes has received appropriate medical treatment at all times during his incarceration.

The Court has also considered Mr. Reyes's discussion of the conditions of confinement at MVCC (see Dkt. #344 at 34; Dkt. #350 at 3-5), along with the BOP's Pandemic Influenza Plan, see https://www.bop.gov/coronavirus/ (accessed September 12, 2020), to which the MVCC subscribes.  According to the Government, several months into the pandemic, only three MVCC staff members had tested positive for the COVID-19 virus, and no inmates.  The Court concludes on balance that the danger that Mr. Reyes faces from infection with COVID-19, even accounting for his medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in

society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Finally, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Reyes's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). Mr. Reyes supervised numerous people in a years-long, wide-ranging cocaine conspiracy that led to the deaths of at least five people. Mr. Reyes's plea deal with the Government spared him exposure to a life sentence, but the conduct in which he engaged for a period of years was among the worst that this Court has seen. A reduction in sentence on the record before the Court is simply unwarranted.[3]

## CONCLUSION

For the foregoing reasons, Mr. Reyes's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 343.

---

[3]     To the extent not already pursued, Mr. Reyes may pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is reserved to the discretion of the BOP.

SO ORDERED.

Dated:        September 14, 2020
              New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge